| | | |
|---|---|---|
| NATHANIEL D. MILLER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: 1:07-CV-163-TS |
| | ) | (consolidated with Cause No.: 1:07-CV-302-TS) |
| KIMBERLY SEISS, | ) | |
| TERESA SMITH, and THOMAS | ) | |
| STRAUSBORGER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 52], filed on

July 31, 2009, in which Defendants Kimberly Seiss, Teresa Smith, and Thomas Strausborger ask

the Court to enter judgment in their favor as a matter of law pursuant to Federal Rule of Civil

Procedure 56. Defendant Smith filed a separate Motion for Summary Judgment [DE 65]

pertaining to claims that the Plaintiff lodged against her in cause number 1:07-CV-302, which

the Court consolidated with this cause on August 27, 2009.


## BACKGROUND

On July 10, 2007, the Plaintiff, proceeding *pro se*, filed a Complaint against the Fort

Wayne Police Department and three of its detectives, Brian Martin, Kimberly Seiss, and Teresa

Smith. On August 13, the Plaintiff filed an Amended Complaint in response to the Court's Order

to Cure Deficiencies. On August 30, the Court ordered the Plaintiff to file a more definite

statement with regard to his Amended Complaint because it did not contain sufficient detail for

the Court to fulfill its screening obligation under 28 U.S.C. § 1915A. After the Plaintiff filed a

more definite statement, the Court granted the Plaintiff leave to proceed against Martin, Seiss, and Smith in their individual capacities for monetary damages on his Fourth Amendment unlawful search and seizure claim, and against Martin in his individual capacity for monetary damages on his Fourth Amendment excessive force claim. The claims arose out of the Plaintiff's allegations that on April 3, 2007, the Defendants entered his friend's house at 2716 Kingsland Court where he was sleeping, without a warrant or probable cause, and searched the premises and seized contraband. The Plaintiff also alleged that he was injured when Defendant Martin kicked in the front door, which hit him in the face.

On June 24, 2008, the Defendants filed their Answer. Shortly thereafter, on July 7, the Plaintiff moved to amend his complaint on grounds that he had obtained more accurate information about the events of which he complained, specifically the identity of the individuals involved in the April 3 search and seizure. He wanted to dismiss Detective Brian Martin as a Defendant because he "was not present April 3, 2007, at 2716 Kingsland Ct." (Pl.'s Mot. to Amend ¶ 4, DE 19), and asserted that Sgt. Thomas L. Strausborger was present instead. The Plaintiff also stated, for the first time, that he believed that the Defendants' actions in conducting the unlawful search were racially motivated.

The Court granted the Plaintiff leave to amend his complaint, and through the screening process granted the Plaintiff leave to proceed against Strausborger, Seiss, and Smith in their individual capacities for monetary damages on his Fourth Amendment claim for an unlawful search, and on his Fourteenth Amendment equal protection claim. The Court also granted the Plaintiff leave to proceed against Strausborger in his individual capacity for monetary damages on his Fourth Amendment claim for an excessive use of force. On August 22, the Defendants

filed their Answer to the Amended Complaint.

On July 31, 2009, Defendants Strausborger, Smith, and Seiss moved for summary judgment on the claims that they violated the Plaintiff's Fourth and Fourteenth Amendment rights, and that Strausborger used excessive force. In support of their Motion, the Defendants designated the following evidence: Exhibit A, Affidavit of Detective Teresa Smith; Exhibit B, Affidavit of Sergeant Thomas Strausborger; Exhibit C, Affidavit of Detective Kimberly Seiss; Exhibit D, Certified Copy of the Affidavit for Probable Cause and Order Finding Probable Cause, *State of Indiana v. Nathaniel Miller*, Cause No. 02D04-0704-FB-000048; Exhibit E, chronological case summary for *State of Indiana v. Miller*, Cause No. 02D04-0704-FB-000048; Exhibit F, March 30, 2007, Search Warrant Affidavit prepared by Detective Teresa Smith; Exhibit G, March 30, 2007, Search Warrant issued by Allen County Superior Court; Exhibit H, photograph of Nathaniel Miller at scene; and Exhibit I, Nathaniel Miller Deposition pages 15, 20, and 31. The Defendants also filed a Memorandum in Support [DE 53], and a Notice of Filing Motion for Summary Judgment [DE 54], informing the Plaintiff of his obligation to respond to their Motion for Summary Judgment.

On August 27, the Plaintiff filed a Motion in Limine [DE 58], asking the Court to exclude from evidence the Search Warrant Affidavit designated as Defendant's Exhibit F, and the Search Warrant designated as Exhibit G. The Plaintiff argued that the documents lacked certification, were hearsay, did not meet the requirements of Federal Rule of Evidence 902, and were not admissible under Federal Rule of Civil Procedure 44(a) as an official record. The Defendants moved for an extension of time to respond to the Plaintiff's Motion in Limine, reasoning that it was most likely intended to be a motion to strike the Defendant's Exhibits F and

G in support of their Motion for Summary Judgment. The Defendants stated that they intended to address the Motion in Limine accordingly, but wanted to do so after the Plaintiff responded to their Motion for Summary Judgment because the response could have some bearing on their response to the Motion in Limine. The Court granted the requested extension.

On October 5, the Plaintiff filed his Brief in Opposition to Defendants' Summary Judgment Motion [DE 73], and provided his own affidavit [DE 74]. On October 15, the Defendants filed their Response to Plaintiff's Motion in Limine/Motion to Strike Defendants' Exhibits "F" and "G" in Support of Defendants' Motion for Summary Judgment [DE 76], and filed their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [DE 77].

In a separate lawsuit, initiated by a Complaint filed on November 28, 2007, the Plaintiff alleged that Fort Wayne police officer Teresa Smith "submitted a recklessly false and perjurous [sic] affidavit for probable cause." According to the Plaintiff's Complaint, Smith included information in the affidavit that she obtained from an illegal search—the same April 3, 2007, search that the Plaintiff was challenging as unlawful in Cause Number 1:07-CV-163. After screening the case, the Court granted the Plaintiff leave to proceed against Smith in her individual capacity for monetary damages on his Fourth Amendment claim that she caused a warrant to be issued for his arrest knowing that her affidavit included false information to establish probable cause. The Court later consolidated this case with the Plaintiff's suit against Seiss, Smith, and Strausborger.

On September 4, 2009, Smith moved for summary judgment [DE 65, originally docketed as DE 61], and also filed a Memorandum in Support [DE 62] and the requisite notice to the *pro se* Plaintiff [DE 63]. On September 21, the Plaintiff moved, again by filing a Motion in Limine

[DE 69], to exclude the Search Warrant Affidavit and Search Warrant on grounds that they were not admissible. Both the Search Warrant Affidavit and the Search Warrant had been designated as evidence in support of Smith's Motion for Summary Judgment. Smith moved for an extension of time to respond to the Motion in Limine on grounds that she wanted to first review the Plaintiff's response to her Motion for Summary Judgment. The Plaintiff also moved for an extension of time to respond. The Court granted both motions, and on October 26, Smith responded to the Motion in Limine [DE 81], on November 19, the Plaintiff filed his Brief in Opposition to Defendant['s] Summary Judgment Motion [DE 83], and on December 7, Smith filed her Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 87].

Additionally, on December 14, the Plaintiff filed a Motion to Amend Complaint [DE 88], seeking to add a new defendant whom he contends "was present and may have contributed to injuries to the plaintiff." (Mot. to Amend 1.) On December 22, the Defendants responded, urging the Court to deny the Motion to Amend on grounds that it would cause undue delay in the proceedings and because it would be futile as a time-barred claim to which relation back does not apply.[1]

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

---

[1] On October 13, 2009, the Plaintiff filed a nearly identical motion seeking to add the same defendant [DE 75]. The Court denied the motion because the statute of limitations had expired and relation back did not apply. Alternatively, and even if the statute of limitations was not a bar, the Court stated that it would deny the motion on the basis of undue delay. (Opinion and Order, DE 82.)

as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp*., 168 F.3d

998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## STATEMENT OF FACTS

Teresa Smith is a Detective for the Fort Wayne Police Department. Detective Smith began investigating whether the Plaintiff was involved in drug dealing after a confidential informant told her that he could make a purchase of crack cocaine from a person named Nate, who lived at 2716 Kingsland Court. Detective Smith determined through police databases that the informant was referring to the Plaintiff, Nathaniel Miller. In connection with this investigation, Detective Smith arranged for two controlled buys of crack cocaine to take place between the informant and the Plaintiff at 2716 Kingsland Court in Fort Wayne, Indiana. On two separate occasions, March 26 and 29, 2007, the informant purchased crack cocaine from the Plaintiff at the Kingsland Court residence using money provided by the Fort Wayne Police Department. Before he conducted these transactions, Detective Smith and other members of the Fort Wayne Police Department took the following steps: searched the informant; placed a digital recording device on his person; provided the informant with pre-recorded buy money; and

followed him to the 2716 Kingland Court residence. As they monitored his activity, officers saw the informant go to the front door, meet the Plaintiff, and enter the residence for a few minutes. When the informant left, they followed him, collected the crack cocaine that he purchased, and determined that there was no other illegal contraband on the informant or in his vehicle. Detective Smith showed the informant a photograph array that included a picture of the Plaintiff, and he identified the Plaintiff as the person who sold him the crack at 2716 Kingsland Court.

On March 30, Detective Smith prepared a Search Warrant Affidavit for 2716 Kingsland Court. An Allen Superior Court Judge signed a Search Warrant that same day.

On April 3, the Fort Wayne Police Department executed the search. Police secured three individuals, including the Plaintiff, inside the residence before beginning the search. The Defendants maintain that Sergeant Strausborger read out loud the text of the search warrant and *Miranda* rights to the Plaintiff and the other occupants. The Plaintiff claims that he was not presented with or read the warrant or his rights. The Plaintiff, even before being questioned by police, made incriminating statements about his illegal activity and the contraband inside the house and garage, stating that everything inside the house belonged to him. Police recovered marijuana, marijuana seeds, a scale with white residue, Hydrocodone, handguns, other items containing cocaine residue, and $1600 in United States currency. Several of these items were found in the bedroom that the Plaintiff identified as his room. Evidence of a marijuana growing operation was located in the garage. They also recovered mail addressed to the Plaintiff at 2716 Kingsland Court.

Police determined that Eddie Clark, an older gentleman on dialysis and one of the people at the residence during the search, was the owner of the house and that the Plaintiff stayed with

Clark. The police arrested the Plaintiff and transported him to Allen County Lockup. He was charged with two counts of dealing cocaine or narcotic drug, possession of marijuana hash oil or hashish, and possession of a firearm by a domestic batterer.

On April 3, the same day that the search warrant was executed and the Plaintiff was arrested, Detective Smith filed an Affidavit of Probable Cause against the Plaintiff for the charges upon which he was arrested. The following day, an Allen County Superior Court judge reviewed the affidavit and held that probable cause existed for the arrest of the Plaintiff for dealing in cocaine or narcotic drug, possession of marijuana hash oil or hashish, and possession of a firearm by domestic batterer. A jury convicted the Plaintiff of the drug charges.

## DISCUSSION

### A.    Search

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has stated the basic rule of Fourth Amendment jurisprudence:

> The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well—delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 [(1967)] (footnotes omitted).

*United States v. Ross*, 456 U.S. 798, 825 (1982); *see also Brigham City, Utah v. Stuart*, 547 U.S.

398, 403 (noting that the basic principle of Fourth Amendment law that searches inside a home without a warrant are presumptively unreasonable is subject to certain exceptions). In defense of the Plaintiff's claim that the Defendants violated his Fourth Amendment rights when they searched the Kingsland Court residence on April 3, the Defendants have designated as evidence the March 30, 2007, judicially-issued search warrant for 2716 Kingsland Court.

To understand and analyze the Plaintiff's claim, the Court must first identify what the Plaintiff is not claiming. The Plaintiff's challenge to the legality of the search is not one based on the Warrants Clause of the Fourth Amendment, such as when a plaintiff claims that a warrant was not based on probable cause, or was otherwise defective on its face. *See* U.S. Const. amend. IV (setting forth requirement that warrants issue upon probable cause and describe with particularity the place to be searched or things to be seized). Nor does the Plaintiff contend that, once properly issued, the search warrant was improperly executed. *See, e.g., Guzman v. City of Chi.*, 565 F.3d 393, 397 (7th Cir. 2009) (explaining that a warrant that is properly issued must also be properly executed); *see also Horton v. California*, 496 U.S. 128, 140 (1990) (stating that if the scope of a search exceeds that permitted by the terms of a validly issued warrant, the search is unconstitutional). Instead, the Plaintiff's claim rests entirely on his assertion that a search warrant for 2716 Kingsland Court never existed. And thus, according to the Plaintiff, the search was unlawful because no exceptions to the warrant requirement applied.

The Defendants have met their initial burden of proving that there is no genuine issue of material fact regarding the existence of a search warrant. The Defendants have submitted the affidavit of the detective who applied for and obtained the search warrant and of the police officers who executed it. These affidavits meet the requirements of Rule 56(e) because they are

"made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In response to this evidence, the Plaintiff has not designated specific material facts from which a jury could conclude that the police failed to obtain a warrant before searching 2716 Kingsland Court on April 3, 2007.

The only evidence the Plaintiff provides in support of his claim that the search was conducted without a warrant (or exception to the warrant requirement) is his own affidavit. The Plaintiff states that the Defendants "did not present a valid search warrant." (Pl.'s Aff. ¶ 8, DE 74.) Although the Court must accept as true the Plaintiff's statement that police did not present him with a warrant, this does not create a genuine issue of material fact as to whether a warrant existed. An affidavit must be made on personal knowledge. Fed. R. Civ. P. 56(e)(1); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)). The Plaintiff, as a civilian and a suspect in a drug investigation, does not have personal knowledge of the police investigation into the activities at 2716 Kingsland Court. He was not privy to whether the police sought a search warrant or whether a judge issued it. Thus, he cannot conclude from the one fact that was within his knowledge—he was not presented with a warrant—that no warrant existed. Without evidence supported by specific facts, the Plaintiff's conclusory allegations about the search warrant cannot

defeat a motion for summary judgment. *Payne*, 337 F.3d at 773 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Thus, the Plaintiff's affidavit does not create a genuine issue of material fact.

In further support of his claim that the police did not have a search warrant before they entered and searched the Kingsland Court residence, the Plaintiff points out that the chronological case summary for his criminal case is "devoid of an affidavit for probable cause and search warrant as required by the Fourth Amendment." (Br. in Opp. 2, DE 73.) Although the Plaintiff's observation about the chronological case summary is correct, it does not create a genuine issue of material fact as to whether a search warrant was issued on March 30, 2007, because the chronological case summary does not purport to chronicle events that occurred before April 10, 2007. Before this date, there was no criminal action pending against the Plaintiff.

The Plaintiff's final challenge to the existence of the March 30 search warrant is contained in his Motion in Limine, where he argues that the warrant and the search warrant affidavit are inadmissible evidence for the Court to consider. The Plaintiff submits that the warrant and supporting affidavit must be stricken because they are hearsay and do not show a sufficient indicia of reliability. The very existence of a search warrant for 2716 Kingsland Court negates the Plaintiff's claim. The truth of the matters asserted in the warrant are not important and hearsay is not implicated. In any event, Detective Smith, Detective Seiss, and Sergeant Strosborger submitted sworn affidavit testimony detailing their roles in investigating drug trafficking at 2716 Kingsland Court, obtaining the search warrant, and executing the warrant, thus providing independent admissible evidence demonstrating the existence of the search

warrant. As for the search warrant affidavit, it is subscribed and sworn before an Allen Superior Court judge and the deputy prosecuting attorney, signed by Detective Smith, based on her personal knowledge, and sets forth facts that would be admissible in evidence. Accordingly, it meets the requirements of Rule 56(e) for an affidavit supporting summary judgment.

To demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Plaintiff has not presented specific facts from which a reasonable jury could find that the search was conducted without a warrant in violation of the Plaintiff's Fourth Amendment rights. The Defendants are entitled to summary judgment on this claim.

**B.      The Plaintiff's Arrest**

The Plaintiff claims that there was no warrant for his arrest, and the Defendants did not see him violate any laws. (Brief in Opp. ¶¶ 3, 4, DE 73.) It appears that the Plaintiff, by making these assertions, is claiming that the Defendants could not lawfully arrest him unless they had an arrest warrant or witnessed him engaged in criminal activity.

A plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). The Court notes that in *Russell v. Harms*, 397 F.3d 458 (7th Cir. 2005), the Seventh Circuit rejected the plaintiffs argument that their arrests violated the Constitution because an officer may only arrest a suspect in her home if they are executing a valid arrest warrant, as opposed to a

search warrant. The court disagreed, holding "that police executing a valid search warrant may arrest a resident found within the permissible scope of that search if the officers have probable cause to believe that the resident has committed a crime." 397 F.3d at 466. The court also noted that the police were justified in arresting the plaintiffs when they found them at the home during the search because the evidence known to the police when they applied for the warrant also gave them probable cause to believe that the plaintiffs were committing a crime. *Id.*

Here, the evidence known to the police when they applied for the warrant and the additional evidence of drug trafficking that they discovered during the execution of the search warrant gave the police probable cause to arrest the Plaintiff. Before applying for the search warrant, a confidential informant told police that he could buy cocaine from a person named Nate at 2716 Kingsland Court. Detective Smith checked the Spillman database and determined that the informant was referring to the Plaintiff, Nathaniel Miller. She then arranged for the informant to conduct two controlled purchases of drugs from the informant's source at 2716 Kingsland Court. When the police executed the search warrant, they found the Plaintiff, drugs, and related paraphernalia at the house. This evidence was sufficient to allow officers to reasonably believe that the Plaintiff had violated Indiana Code § 35-48-4-1, which makes it a criminal offense to knowingly or intentionally deliver cocaine or a narcotic drug. Moreover, the discovery of a marijuana growing operation in the garage provided reason to believe that the Plaintiff was violating Indiana Code § 35-48-4-11, which states that a

> person who: (1) knowingly or intentionally possesses (pure or adulterated) marijuana, hash oil, or hashish; (2) knowingly or intentionally grows or cultivates marijuana; or (3) knowing that marijuana is growing on his premises, fails to destroy the marijuana plants; commits possession of marijuana, hash oil, or hashish, a Class A misdemeanor. However, the offense is a Class D felony (i) if the amount involved is more than thirty (30) grams of marijuana or two (2) grams

of hash oil or hashish, or (ii) if the person has a prior conviction of an offense
involving marijuana, hash oil, or hashish.

Ind. Code § 35-48-4-11. Because "there is no room for a difference of opinion concerning the

facts or the reasonable inferences to be drawn from them," *Sheik-Abdi v. McClellan*, 37 F.3d

1240, 1246 (7th Cir. 1994), the Court properly concludes that probable cause existed as a matter

of law. The existence of probable cause for an arrest is an absolute bar to a § 1983 claim for

unlawful arrest. *Montano v. City of Chi.*, 535 F.3d 558, 568 (7th Cir. 2008).

In a related claim, the Plaintiff maintains that Detective Smith violated his Fourth

Amendment rights when she submitted a false affidavit for probable cause to the Allen Superior

Court after the Plaintiff's arrest. To succeed, the Plaintiff must establish that Detective Smith

knowingly or intentionally or with a reckless disregard for the truth, made false
statements to the judicial officer, and that the false statements were necessary to
the judicial officers' determinations that probable cause existed for the arrests.
*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). A "reckless disregard for the
truth" is demonstrated by showing that the officers entertained serious doubts as
to the truth of their statements, had obvious reasons to doubt the accuracy of the
information reported, or failed to inform the judicial officer of facts they knew
would negate probable cause. *See United States v. Whitley*, 249 F.3d 614, 620–21
(7th Cir. 2001); *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000).

*Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742–43 (7th Cir. 2003) (parallel citations

omitted).

Detective Smith's probable cause affidavit details the police investigation leading to the

Plaintiff's arrest for dealing drugs, including the arrangement of two controlled crack cocaine

purchases by an informant. The Plaintiff notes that the affidavit states that police executed a

valid search warrant even though the chronological case summary does not show either the

affidavit for a search warrant or the search warrant as a record of the Clerk of the Allen County

Circuit and Superior Courts. The absence of the warrant on the chronological case summary does

not create a genuine issue whether Detective Smith's statement about the warrant was false. As already stated, the absence of the search warrant affidavit and search warrant on the chronological case summary does not call into doubt their existence.

The Plaintiff also claims that Detective Smith erroneously indicates in the affidavit that he was read the search warrant along with his *Miranda* rights. Even if a dispute on this point exists, it is not material because the failure to read the warrant would not negate probable cause. Detective Smith's statement about reading the warrant was not necessary to the judicial officer's determination that probable cause existed for the arrest.

The Plaintiff's third complaint about the affidavit is that it references a photograph array, which the Plaintiff argues could not have occurred until April 4, 2007, after the date that Detective Smith drafted the affidavit for probable cause. In support of this claim, the Plaintiff points to testimony from his state criminal trial that shows April 3, 2007, as the date stamped on the photograph that Detective Smith used in the array. Detective Smith testified at trial that, despite this date, she was certain that she showed the informant the array between the first and second controlled drug buy because "I usually do that, and those dates aren't always accurate on those [pictures]." (DE 83 at 16–17.) Given Detective Smith's explanation, the date on the photograph does not establish that Detective Smith had obvious reasons to doubt the accuracy of the information she reported. Even assuming that Detective Smith did not ask the informant to identify the person who sold him the cocaine at 2716 Kingsland Court, there was sufficient evidence in the probable cause affidavit to cause a judicial officer to "reasonably believe[ ], in light of the facts and circumstances within her knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Thompson v. Wagner*, 319 F.3d 931, 934

(7th Cir. 2003) (probable cause standard). Two controlled purchases, drugs and paraphernalia found at 2716 Kingsland Court on April 3, 2007, pieces of mail addressed to the Plaintiff at 2716 Kingsland Court, and the Plaintiff's presence at the residence were sufficient to establish probable cause even without the information about the informant's identification from the photograph array. The Plaintiff has not presented specific facts that would allow a reasonable jury to conclude that false statements in the probable cause affidavit were necessary to the judicial officers' determination that probable cause existed to arrest him for dealing narcotics and for possessing marijuana. Accordingly, the Defendants are entitled to judgment as a matter of law.

**C.      Excessive Force Claim**

The Plaintiff claims that on April 3, 2007, he was hit in the face by the front door when officers kicked it open. He acknowledges that the police would have no way of knowing that he was behind the door when they opened it. Photographs taken on this same day do not show any visible injury.

All claims that a law enforcement officer has used excessive force in the course of an arrest or seizure should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). A seizure under the Fourth Amendment requires purposeful conduct. *See Brower v. County of Inyo*, 489 U.S. 593, 595 (1989) (holding that a Fourth Amendment seizure only occurs when there is a "governmental termination of freedom of movement *through means intentionally applied*"). The police did not intend to restrict the Plaintiff's movement by hitting him with the door. Therefore, they were not in the course of seizing him and he has no claim for

excessive use of force. The Defendants' Motion for Summary Judgment on this claim will be granted.

**D.      Equal Protection Claim**

The Court granted the Plaintiff leave to proceed on his claim that the Defendants' actions in conducting a search without a warrant and seizing him were done in violation of the equal protection clause. The Constitution prohibits selective enforcement of the law based on considerations such as race, *Whren v. United States*, 517 U.S. 806, 813 (1996); *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001), but there is no reliable evidence that this constitutional protection was violated in this case. Not only does the evidence fail to suggest that the Plaintiff was treated differently than others in the manner that he alleges, but the evidence supporting the Plaintiff's claim that race was a motivating factor is limited to his speculation in his deposition that Sergeant Strosborger assumed that all black people are engaged in illegal activity. He did not hear Sergeant Strosborger make any statements based on the Plaintiff's race, and does not even allege that he made any. No reasonable jury could return a verdict for the Plaintiff on the basis of this conjecture, and the Court will grant summary judgment on this claim.

**E.      Fifth Amendment**

The Plaintiff asserts in his affidavit, which he filed with his Brief in Opposition to Defendants' Summary Judgment Motion, that police did not give him *Miranda* warnings, interviewed him even though he had requested counsel, and compelled him to make statements

against his will. In his Brief in Opposition, he presents this failure as evidence that his Fifth Amendment rights were violated, and as a reason to deny the Defendants' request for summary judgment.[2]

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that before police officers interrogate a suspect in custody, they must warn the suspect of his right to remain silent and his right to an attorney. This *Miranda* warning is not required in all interactions between suspects and officers, only when the suspect is "in custody" and subject to "interrogation." *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996) (citing *United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994)). In determining whether a person is "in custody," the question is whether, examining the totality of the circumstances, a reasonable person in plaintiff's position would have felt "at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Interrogation" refers to "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).

A *Miranda* violation provides a ground for liability under 42 U.S.C. § 1983 only when the suspect's statements are used against him in a "criminal case." *Sornberger v. City of*

---

[2] In a September 18, 2007, Statement filed in response to the Court's directive for a more definite statement, the Plaintiff claimed that he was not read his *Miranda* rights. Again, in his Amended Complaint, filed on July 7, 2008, the Plaintiff alleged that his *Miranda* rights were not read to him, adding that police questioned him after he requested an attorney. However, the Court did not address this Fifth Amendment claim in either of its screening orders—either to allow the Plaintiff to proceed with the claim or to dismiss it. Accordingly, the Defendants have not specifically addressed this claim in their summary judgment filings. However, they have designated facts that pertain to it and the Plaintiff has attempted to refute them in his responsive filings. Therefore, the Court will address whether the Defendants are entitled to summary judgment on the Plaintiff's Fifth Amendment claim.

*Knoxville*, 434 F.3d 1006, 1024 (7th Cir. 2006) (citing *Chavez v. Martinez*, 538 U.S. 760, 778 (2003)). Even when the suspect's statements are not used at trial, earlier "courtroom uses" may provide a basis for § 1983 liability. *Id.* at 1025.

The Defendants state that Sergeant Strosborger read *Miranda* rights to the Plaintiff and the other individuals in the house before police conducted the search. Detective Smith further states in her affidavit that

> [b]efore detectives had a chance to question Nathaniel Miller, Nathaniel stated that Eddie Clark had nothing to do with what was inside the house. Nathaniel further stated that he had been doing some illegal activity, including growing marijuana and selling narcotics, out of the residence. Nathaniel also advised that everything found in the residence belonged to him, including handguns located in the garage.

(Smith Aff. ¶ 30, DE 52-10.) The Plaintiff provides the following in his affidavit:

> 8.    That the defendants did not present a valid search warrant, arrest warrant, give any Miranda warnings, nor have consent.
>
> 9.    That the defendants did interrogate and threaten the plaintiff after plaintiff made his request for counsel.
>
> 10.   That the defendant was compelled to make statements against his will by means of threats, intimidation, and display of physical force and show of authority.

(Pl.'s Aff. ¶¶ 8–10, DE 74.) The Court will assume that the facts submitted in Detective Smith's affidavit "exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file." N.D. Ind. L.R. 56.1(b). In his affidavit, the Plaintiff does not specifically dispute that he made the spontaneous statements that Detective Smith identified in her affidavit. Although he states that he was interrogated after he requested counsel, he does not identify when he requested counsel, which Defendant

"interrogate[d]" him, what statements he made in response, how he was threatened and intimidated, or what statements he made against his will. Thus, while his affidavit is sufficient to create an issue of fact whether he was read his *Miranda* rights (and the Court must assume that he was not), and is sufficient to establish for purposes of summary judgment that he, at some point during the search, asked for a lawyer, his vague and conclusory remarks are not sufficient to refute Defendant Smith's detailed statement that the Plaintiff made particular incriminating statements (which she identified in her affidavit) before detectives even questioned him. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (holding that affidavits submitted in response to summary judgment did not meet specificity requirement of Rule 56(e)).

As a matter of law, the incriminating statements that the Plaintiff made to police before any questioning occurred were not made pursuant to an interrogation. *See, e.g., Unites States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002) (holding that inquiry for court is whether an objective observer would have believed that the officer's statements to the defendant were reasonably likely to elicit an incriminating response). Thus, even if *Miranda* warnings were not provided before the Plaintiff made these statements, his constitutional rights were not violated. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981) (explaining that the constitution does not prohibit police from "merely listening" to an accused's voluntary statements and using them against him); *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment.").

As additional proof that he was unlawfully "interviewed" *see* brief in Opp. 6, DE 73 (arguing that "[i]t is clear on the face of the record that the plaintiff was interviewed by the defendants"), the Plaintiff points to Detective Smith's probable cause affidavit, which indicates that "[d]uring a brief interview with the defendant, the defendant admitted to dealing cocaine and

stated that all of the narcotics found in the residence belonged to him," Defs' Mot. for Summ. Judgment, Ex. D. This brief statement in the probable cause affidavit does not provide any of the detail that is lacking in the Plaintiff's own affidavit. Thus, it is not sufficient to refute the specific averments presented in Detective Smith's affidavit.

Regarding the statements that the Plaintiff contends he made after he requested counsel, the Plaintiff provides only his conclusion that he was "interrogate[d]" and "threaten[ed]." Without any detail as to what any officer said to him and in what context, he cannot show that any of the Defendants made statements that were likely to elicit an incriminating response. Additionally, because the Plaintiff does not identify the statements that he purportedly made in response and "against his will," he cannot show that they were used against him in a criminal case, which is a necessary element of his Fifth Amendment claim. Thus, the Plaintiff has not "shown through specific evidence that a triable issue of fact remains on issues for which [he] bears the burden of proof at trial." *Walker v. Shansky*, 28 F.3d 666, 670–71 (7th Cir. 1994) (noting that the "evidence submitted in support of the nonmovant's position must be sufficiently strong that a jury could reasonably find for the nonmovant") *aff'd sub nom. Walker v. Ghoudy*, 51 F.3d 276 (7th Cir. 1995).


**F.      Motion to Amend/Correct Complaint**

The Plaintiff has requested leave to add another police officer as a defendant who is responsible for the injuries he suffered on April 3, 2007. The Plaintiff asserts that this officer was not named earlier because of a mistake in his identity.

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave"

to amend a pleading "when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, while leave to amend should be freely given when justice so requires, a court should not allow a plaintiff to amend his complaint when to do so would be futile. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) (denying amendments that would not have withstood a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted).

The Plaintiff's proposed amendment seeks to assert against another officer the same claims that have already been presented in the pleadings and the summary judgment briefing. It would be futile to allow the Plaintiff to add a new defendant to answer to claims that have not survived a motion for summary judgment, and his Motion to Amend will be denied as moot. Even if the claim were not moot, undue delay would provide an independent reason to disallow the amendment the Plaintiff seeks.

## CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment [DE 52 and 65] are GRANTED, the Motions in Limine [DE 58, 69] are DENIED, and the Motion to Amend/Correct Complaint [DE 88] is DENIED AS MOOT. The Clerk is DIRECTED to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on January 25, 2010.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT